IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| HARLEY-DAVIDSON MOTOR COMPANY, INC., and H-D MICHIGAN, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | 8:10CV86 |
| v. | ) ) | |
| ELWORTH'S HARLEY-DAVIDSON SALES & SERVICE, INC., and GREGORY J. ELWORTH, | ) ) ) ) | MEMORANDUM OPINION |
| Defendants. | ) ) | |
| ELWORTH'S HARLEY-DAVIDSON SALES & SERVICE, INC., and GREGORY J. ELWORTH, | ) ) ) ) | |
| Counterclaim- Plaintiffs, | ) ) ) | |
| HARLEY-DAVIDSON MOTOR COMPANY, INC., | ) ) ) | |
| Counterclaim- Defendants. | ) ) ) | |

This matter is before the Court on plaintiffs Harley-Davidson Motor Company, Inc. ("HDMC") and H-D Michigan, LLC's ("HDM") motion for a preliminary injunction (Filing No. 6). The Court conducted an evidentiary hearing on plaintiffs' motion on March 23, 2010. Upon review of the motion, the parties' briefs and evidentiary submissions, and the arguments of counsel, the Court finds plaintiffs' motion should be granted.

## BACKGROUND

HDMC is the manufacturer and exclusive U.S. distributor of Harley-Davidson motorcycles. HDM is the exclusive owner of

the trademarks, service marks and trade names, and/or word and design marks for Harley-Davidson products and services.  HDM owns the federally registered trademarks identified in Filing No. 8-10 (the "Harley-Davidson Trademarks").  HDM licenses the use of the Harley-Davidson Trademarks to Harley-Davidson Motor Company Group, LLC, which sublicenses the use of such trademarks to HDMC.  HDMC is permitted to further sublicense the Harley-Davidson Trademarks to certain Harley-Davidson dealers.

HDMC contracts with independent dealers to sell and service Harley-Davidson motorcycles.  Elworth's Harley-Davidson Sales & Service, Inc. ("Elworth's") is an independent dealer located in Norfolk, Nebraska, that has had contracts with HDMC since 1981 to act as an authorized Harley-Davidson dealer.  Gregory Elworth is the president and sole owner of Elworth's.

On or about December 22, 2004, Elworth's and HDMC entered into a Harley-Davidson Motor Company Motorcycle Dealer Contract (the "Dealer Contract," Filing No. 8-2).  Under the Dealer Contract, Elworth's had the right to sell Harley-Davidson products, identify itself as an authorized Harley-Davidson motorcycle dealer, and use certain Harley-Davidson trademarks and service marks in the manner provided in the contract.  In particular, section K of the Harley-Davidson Motor Company General Conditions of Sales and Service ("General Conditions"), which is incorporated into the Dealer Contract, provides in part:

> **2. DISPLAY.**  Dealer is granted the
> non-exclusive, non-transferable
> license to display the Trademarks

>           solely in the conduct of its
>           authorized Harley-Davidson
>           dealership business but only in the
>           manner approved by [HDMC] and HDM
>           from time to time. . . . This
>           license or any approval previously
>           granted by [HDMC] and HDM shall
>           terminate automatically upon the
>           termination of this Contract for
>           any reason, or may be cancelled or
>           withdrawn by [HDMC] and HDM at any
>           time without cause.

Under section M.7 of the General Conditions, Elworth's agreed to cease using plaintiffs' trademarks upon termination or expiration of the Dealer Contract. The Dealer Contract expired by its terms on December 31, 2009.

In July 2007, HDMC applied to the Nebraska Motor Vehicle Industry Licensing Board ("Board") for permission to terminate the Dealer Contract. Elworth's objected to the proposed termination, and a termination hearing before the Board was set for October 16, 2008.

Beginning in April 2008, counsel for the parties engaged in settlement discussions. Ultimately, the parties entered into a settlement agreement on or about October 15, 2008 ("Settlement Agreement," Filing No. 8-3), the day before the scheduled Board termination hearing. The Settlement Agreement provided that Elworth's could temporarily continue to operate as an authorized Harley-Davidson dealer; the purpose of the continuation was to give defendants the opportunity to sell the dealership. The Settlement Agreement provided that defendants would have until December 31, 2009, to conclude an approved sale, and if a sale was not accomplished by that date, the Dealer

Contract would "be deemed to have been voluntarily surrendered and terminated" without further notice or the need for approval by the Board, and Elworth's would be deemed to have relinquished any and all rights to be a Harley-Davidson dealer.  HDMC agreed to withdraw its July 27, 2007, request for permission to terminate the Dealer Contract.  The parties agreed to keep the terms of the Settlement Agreement confidential.  On October 15, 2008, counsel for the parties advised the Board that the parties had reached a settlement agreement, and HDMC withdrew its request for permission to terminate.  The Board accepted the settlement, dismissed the termination proceeding, and did not request or require that the Settlement Agreement be filed or specifically approved by the Board.

Defendants did not conclude a sale of the dealership by December 31, 2009.  Thereafter, HDMC notified defendants that pursuant to the Settlement Agreement, the Dealer Contract was deemed voluntarily surrendered and terminated, and defendants needed to cease use of all Harley-Davidson trademarks and service marks.  Defendants have continued to hold Elworth's out as an authorized Harley-Davidson dealer and to use the Harley-Davidson Trademarks.  It is defendants' position that the Dealer Contract never terminated, and they are still entitled to the rights thereunder.

Plaintiffs have asserted claims for (1) trademark infringement, unfair competition, and trademark dilution under the Lanham Act, (2) trademark infringement, unfair competition,

and misappropriation of goodwill in violation of the common law, and (3) breach of contract.  Plaintiffs request the Court enter an order that preliminarily enjoins and restrains defendants from using the Harley-Davidson Trademarks and from otherwise holding Elworth's out as an authorized Harley-Davidson dealership.

## DISCUSSION

The Court must consider four factors in determining whether preliminary injunctive relief is appropriate:

> (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc).  "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction."  *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986).  "The party seeking injunctive relief bears the burden of proving all the *Dataphase* factors."  *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).  "[T]he burden on the movant is heavy, in particular where, as here, 'granting the preliminary injunction will give [the movant] substantially the relief it would obtain after a trial on the merits.'"  *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1179 (8th Cir. 1998) (quoting *Sanborn Mfg.*

*Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993)).

**A. Probability That Movant Will Succeed On The Merits**

Because the parties primarily focus on the third factor, the Court addresses it first. Plaintiffs have asserted claims for trademark infringement and unfair competition in violation of §§ 32 and 43(a) of the Lanham Act. To prevail on these claims, plaintiffs must prove (1) they own a valid and legally protectable trademark, (2) defendants have used the mark in commerce without plaintiffs' consent, and (3) such unauthorized use is likely to cause confusion. 15 U.S.C. § 1114(1); 15 U.S.C. § 1125(a); *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1188-89 (6th Cir. 1997); *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1288 n.2 (9th Cir. 1992) ("[T]he elements of infringement and unfair competition claims are essentially the same; the rulings stand or fall together.").

Defendants do not meaningfully dispute that plaintiffs have sufficiently shown a likelihood of success on the first and third elements. Similarly, the record supports a finding that the first element is satisfied, and case law supports a finding that the third element is sufficiently satisfied. *See Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983) ("Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks."); *U.S. Structures,*

*Inc.*, 130 F.3d at 1190 (holding "that proof of continued, unauthorized use of an original trademark by one whose license to use the trademark had been terminated is sufficient to establish 'likelihood of confusion.'"); *U.S. Jaycees v. Phila. Jaycees*, 639 F.2d 134, 142 (3d Cir. 1981) ("We perceive that there is great likelihood of confusion when an infringer uses the exact trademark . . . .")

The primary issue is whether plaintiffs can sufficiently establish the second element: that defendants' use of the Harley-Davidson Trademarks is unauthorized. Defendants contend the Dealer Contract never terminated because (1) plaintiffs failed to comply with § 60-1420 of the Motor Vehicle Industry Regulation Act (the "Act"), Neb. Rev. Stat. §§ 60-1401.01, et seq., which states the requirements for terminating a franchise,[1] and (2) the Settlement Agreement's automatic termination provisions are void as against public policy.

Defendants' arguments lack merit. Foremost, the Dealer Contract expired by its terms on December 31, 2009. Regardless of plaintiffs' compliance with the Act or the validity of provisions in the Settlement Agreement, defendants had no rights under the Dealer Contract to use the Harley-Davidson Trademarks after December 31, 2009.

---

[1] There is no dispute that the Dealer Contract constitutes a "franchise" under the Act. *See* Neb. Rev. Stat. § 60-1401.02.

Even assuming the Dealer Contract, and defendants' license to use the Harley-Davidson trademarks, would have remained in effect unless and until the Dealer Contract was terminated/not renewed in accordance with the Act, the Court finds plaintiffs are likely to prove that they properly terminated the Dealer Contract under the Act.  Neb. Rev. Stat. § 60-1420 provides:

> (1) Except as provided in subsection (2) of this section, no franchisor shall terminate or refuse to continue any franchise unless the franchisor has first established, in a hearing held pursuant to section 60-1425, that:
>
>    (a) The franchisor has good cause for termination or noncontinuance;
>
>    (b) Upon termination or noncontinuance, another franchise in the same line-make will become effective in the same community, without diminution of the franchisee's service formerly provided, or that the community cannot be reasonably expected to support such a dealership; and
>
>    (c) The franchisor is willing and able to comply with section 60-1430.02.
>
> (2) Upon providing good and sufficient evidence to the board, a franchisor may terminate a franchise without such hearing . . . (c) upon a mutual written agreement of the franchisor and franchisee.

Plaintiffs filed an application for permission to terminate the Dealer Contract in July 2007, and the parties

ultimately entered into the Settlement Agreement to resolve the termination dispute.  Pursuant to § 60-1420(2)(c), a franchisor may terminate a franchise if it provides "good and sufficient" evidence of a mutual agreement to terminate the franchise to the Board.  Plaintiffs likely complied with this requirement when counsel for the parties informed the Board of the Settlement Agreement in October 2008.  The details of the Settlement Agreement were not disclosed due to the parties' agreement to keep the terms confidential, but the Board accepted the confidential agreement and did not request or require that the Settlement Agreement be filed or specifically approved by the Board.

Under the circumstances of this case, it is not likely that plaintiffs needed to produce "good and sufficient" evidence of the Settlement Agreement to the Board a second time in December 2009/January 2010 to satisfy § 60-1420(2).  Further, because § 60-1420(2)(c) specifically authorizes parties to resolve termination disputes by agreement, and the parties advised the Board of the Settlement Agreement, it is unlikely that the Settlement Agreement's termination provisions are void as against public policy.  Plaintiffs have sufficiently shown that pursuant to the Settlement Agreement, and in accordance with the Act, the Dealer Contract terminated December 31, 2009.

Based on the foregoing, plaintiffs are likely to prove that defendants' use of the Harley-Davidson Trademarks beginning January 1, 2010 was unauthorized.  Plaintiffs have demonstrated a

likelihood of success on the merits of their claims for trademark infringement and unfair competition in violation of §§ 32 and 43(a) of the Lanham Act. Thus, this factor weighs in favor of granting a preliminary injunction, and it is not necessary to analyze plaintiffs' remaining claims.

**B. Threat Of Irreparable Harm To The Movant**

The threat of irreparable harm to plaintiffs is presumed because they have shown a likelihood of success on the merits of their claims. *See Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 505 (8th Cir. 1987); *see also Gen. Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 625 (8th Cir. 1987). Thus, this factor weighs in favor of granting a preliminary injunction.

**C. Balance Of The Harms**

Defendants contend they will suffer significant harm if a preliminary injunction issues because it will put them out of business and cause them to lose the goodwill they have established.

The Court finds that any threatened harm to defendants is not significant in this case because issuing a preliminary injunction would simply give effect to the agreements defendants voluntarily entered into. Defendants were fully aware that the Dealer Contract expired by its own terms and terminated pursuant to the terms of the Settlement Agreement on December 31, 2009, and that plaintiffs did not intend to extend or renew the Dealer Contract. Defendants had ample time to take legal or

administrative action before January 2010 if they intended to and believed they were entitled to use the Harley-Davidson Trademarks after December 31, 2009.

Plaintiffs have a significant interest in preventing further unauthorized use of the Harley-Davidson Trademarks. On balance, this factor weighs in favor of plaintiffs.

**D. Public Interest**

The public interest is served by preventing consumer confusion in the market place, especially, where as here, the potential for consumer confusion is significant. *See Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 44 (2d Cir. 1986). Thus, this factor weighs in favor of granting a preliminary injunction.

**E. Balancing Of The Factors**

The Court finds all four factors favor granting preliminary injunctive relief in favor of the plaintiffs. A separate order will be entered in accordance with this memorandum opinion.

DATED this 8th day of April, 2010.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court